*CJP Supp. 69 Opinion
BONNER, Chairperson.
This disciplinary matter concerns Judge Howard R. Broadman, a judge of the Tulare County Superior Court.
APPEARANCES
Trial Counsel for the Commission on Judicial Performance are Jack Coyle, William E. Smith and Valerie Marchant. Counsel for Judge Broadman are James E. Friedhofer, Douglas R. Reynolds and Eric D. Weitz of Lewis, D’Amato, Brisbois & Bisgaard.
PROCEDURAL HISTORY
Judge Broadman became a municipal court judge in 1986 and was appointed to the superior court in 1988. The events which are the subject of this matter took place between August 1996 and July 1997.
Formal proceedings in this matter were commenced with the filing on January 22, 1998, of a notice of formal proceedings which set forth four counts. On February 4, 1998, Judge Broadman filed a verified answer denying the allegations in the notice of formal proceedings.
As provided for by rule 121(b) of the Rules of the Commission on Judicial Performance (Commission), the Supreme Court appointed three special masters to conduct an evidentiary hearing and to prepare a written report. The evidentiary hearing was held on September 28, 29, and 30, 1998, before Justice Rodney Davis, presiding, of the Court of Appeal, Third Appellate District, Judge Paul H. Alvarado of the San Francisco County Superior Court, and Judge Irma J. Brown of the Compton Municipal Court, Los Angeles County. On December 14, 1998, the special masters filed their report.
On December 29, 1998, the office of trial counsel filed an opening brief to the Commission and on December 30, 1998, Judge Broadman filed a brief of objections to the report of the special masters. Following further briefing the matter was orally argued before the Commission on February 10, 1999. Ten members of the Commission participated.[1]
FINDINGS AND CONCLUSIONS
The notice of formal proceedings set forth four counts of alleged misconduct. The first count alleged that on June 24, 1997, Judge Broadman, during a meeting with the presiding and assistant presiding judges, threatened to report *CJP Supp. 70 the presiding judge to the Commission. The special masters found that this allegation was not supported by clear and convincing evidence. Trial counsel have not filed any objections. The Commission, having reviewed the record, concurs with the special masters’ conclusion and dismisses the first count.
Judge Broadman has filed objections to the special masters’ findings and conclusions on count two and trial counsel has filed objections to the special masters’ findings and conclusions on counts three and four.
1. Count Two—The Court Trial in King v. Wood
As noted by the special masters, with the exception of the question of whether Judge Broadman interfered with King’s right to appeal, the facts are undisputed.
On January 29, 1996, Genice King filed a complaint to quiet title in a house. She alleged that the owner had agreed to convey the property to her. On April 16, 1996, Ms. King was sworn, presented copies of a proof of service and secured a default judgment quieting title. On May 7, 1996, Judge Broadman signed a default judgment prepared by Ms. King.
On May 31, 1996, Judge Broadman granted a motion to set aside the default order based, in part, upon a showing that the proof of service on the owner of the house purported to show service two days after his death.
On November 21, 1996, the case was assigned to Judge Broadman for trial. The masters summarized the evidence of what happened as follows:
“When Broadman took the bench to preside over the trial, attorney Jim Johnson was at the counsel table with his client, defendant Sandra Wood. The plaintiff, Genice King, was also seated at counsel table with her daughter. This was Johnson’s first trial.
“Broadman had before him a trial brief prepared by attorney Johnson. That brief alleged the evidence would show that Genice King has no legal interest in the property; that she has no equitable interest grounded in an investment of either her time and/or $10,000 in improvements; and that the alleged contract for sale violates the statute of frauds.
“Broadman called the case for trial and asked the parties to tell him what the case was about. After King spoke, Johnson gave a version of what he had prepared as an opening statement and then his client made a statement. Broadman then alternated asking the parties questions about the case. No one was placed under oath. Genice King and Wood both recall Broadman telling *CJP Supp. 71 them he was proceeding ‘off the record.’ King testified Broadman was referring to the receipt of documents. Wood did not clarify what she believed Broadman was referring to when he told them that.
“During Broadman’s questioning of King, she handed him some documents which he examined. After questioning King and Johnson’s client, Broadman asked if either of them had anything else to add. He then told them that he was taking the case under submission and asked Johnson to prepare a statement of decision and judgment.
“At the time of trial, Johnson expected to participate in a traditional trial. He was prepared to cross-examine King, call his client to the stand, and call rebuttal witnesses. Broadman did not state that he was going to follow an alternative procedure; nor did he state that the parties could have a traditional trial if they wanted one. Johnson was not sure what Broadman did. He assumed it was some form of judgment without the standard trial procedures.
m
“On December 3, 1996, Broadman signed a statement of decision and judgment prepared by attorney Johnson. This document asserts, in pertinent part, that the matter came on for trial on November 21; that Broadman reviewed and considered the documents submitted and arguments of both parties; and that Genice King had no legal or equitable interest in the property.”
The masters found clear and convincing evidence that Judge Broadman engaged in misconduct in denying the parties their right to procedural due process.[2] They noted that the fundamental due process right to a hearing generally embraces the right to present evidence and to confront and cross-examine adverse witnesses. They determined that “on his own initiative, Judge Broadman elected to adjudicate the lawsuit through a procedure that did not afford the parties the opportunity to present evidence or confront and cross-examine witnesses,” and that in doing so Judge Broadman “chose to consciously deny the parties procedural due process for what we infer to be a misplaced effort to conserve judicial resources.”
In support of their conclusion that Judge Broadman engaged in misconduct, the masters explain: “Broadman did not inform the parties that trial would proceed in an alternative order. He informally questioned each party, examined documents Genice King brought with her, and then summarily *CJP Supp. 72 concluded the hearing without giving the parties an opportunity to present evidence or confront and cross-examine witnesses. Inquiring at the conclusion of the proceeding as to whether the parties had anything to add is not the equivalent of an opportunity to present evidence.”[3] The masters note that although it appears that Genice King should not have prevailed in her lawsuit, “Broadman’s decision to deny the parties the opportunity to present witnesses and other evidence prevents us from so concluding with the certainty that arises when lawful procedures are adhered to.”
The Commission agrees with the special masters’ conclusion that Judge Broadman’s actions amounted to willful misconduct because “he performed a judicial act that exceeded his lawful power with a conscious disregard for the limits of his authority.” (See Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1092 [77 Cal.Rptr.2d 408, 959 P.2d 715].) They note that “no judge, much less a judge with Broadman’s experience and intelligence, would reasonably believe that in proceeding in this truncated way that he was affording the parties the trial they were entitled to.”
Judge Broadman concedes that he now recognizes that it was wrong to conduct the trial the way he did in King v. Wood, but, through counsel, argues that this was merely legal error, not ethical misconduct, and thus not a ground for discipline.
We, as did the special masters, find that Judge Broadman’s actions constituted willful misconduct, not mere legal error. No legal question was presented to the parties or briefed. Rather, Judge Broadman proceeded as he was wont, apparently focused on his vision of efficiency with little regard for the values that underlie the usual procedures for presenting evidence and cross-examining witnesses. This conduct is conceptually similar to the activities found to be unethical by the Supreme Court in cases such as Furey v. Commission on Judicial Performance (1987) 43 Cal.3d 1297, 1310-1311 [240 Cal.Rptr. 859, 743 P.2d 919] and Gubler v. Commission on Judicial Performance (1984) 37 Cal.3d 27, 43-48 [207 Cal.Rptr. 171, 688 P.2d 551].
We conclude that Judge Broadman’s management of the trial in King v. Wood denied the parties due process and constituted willful misconduct. His *CJP Supp. 73 conduct violated California Code of Judicial Ethics canons 3B(7) (a judge shall accord to every person who has a legal interest in a proceeding the right to be heard according to law), 2A (a judge shall respect and comply with the law and shall act in a manner that promotes public confidence in the integrity of the judiciary) and 1 (a judge shall uphold the integrity of the judiciary). The Commission’s vote on willful misconduct was nine to one.[4]
2. Count Three—Questioning a Teenage Witness in Smith v. Smith
Count three alleges that Judge Broadman’s questioning of a minor witness on August 28, 1996, violated canons 1, 2A and 3B(4) of the California Code of Judicial Ethics. The questioning took place on the third day of a contempt proceeding. The father had charged the mother with contempt for not requiring the three minor children to reside with him as ordered by Judge Broadman. The contempt charges also alleged that the daughter, Gretchen, had told the father that the mother had made certain statements to Gretchen which the father alleged violated Judge Broadman’s order.
After considerable discussion and over the mother’s attorney’s objection, Judge Broadman had admitted the father’s testimony of what the daughter had allegedly said the mother had said. This “double hearsay” was admitted by Judge Broadman not as proof of its truth, but for the limited purpose of establishing the children’s state of mind.
The mother’s attorney decided, in light of the admission of the father’s testimony, to call the 15-year-old daughter, Gretchen, as a witness. Gretchen had denied a couple of the allegations against her mother and indicated that she would not live with her father when Judge Broadman intervened. The transcript, as indicated in the notice of formal proceedings, reads:
“The Court: I need to do something. I need to ask a couple of questions. Do you understand what I mean when I say do you believe in the rule of law?
“The Witness: Yes.
“The Court: What do you understand that to mean?
“The Witness: That you’re the judge and you decide for people what should happen.
“The Court: Can you tell me why I should believe a single word you say since you clearly do not act like you believe in the rule of law?
*CJP Supp. 74 “Attorney for mother: Your Honor, I apologize, Your Honor, and I mean this with the—
“The Court: You can object.
“Attorney for mother: I mean, with the greatest of respect to the Court, I would not allow that to be done to my child, and I think it’s an inappropriate question. I think it’s abusive to this child. I have said that. My objection is on the record.
“The Court: Do you understand my question?
“The Witness: Yes, I do.
“The Court: Are you going to help me? I’m not yelling or I have a calm voice, you’ll readily agree to that, I presume. I’m asking in a calm manner. I don’t want there to be any kind of implication that I’m screaming at this lady or doing anything like that.
“Attorney for mother: It is not the volume of the question, Your Honor, it is the nature of the question and the age of the child that I am concerned about.
“The Court: You’re fifteen, right?
“The Witness: Yes.
“The Court: Can you help me in that because I’m sitting here, and I know this is abusive to you, but I have a problem because you’re telling me important things, seemingly, but you’re someone who’s acted in direct contradiction to all of the evidence I’ve heard so far in the rule of law. See, I’m having a little bit of difficulty in my own mind giving a little bit of credibility in your own behalf?
“The Witness: No. I understand.
“The Court: Can you help me?
“The Witness: With what?
“The Court: How can I reconcile those two things?
“The Witness: I don’t understand what you mean, ‘help you.’
*CJP Supp. 75 “The Court: Well, I have to decide what the right thing to do here is. One of the things is I have to decide when the people are telling the truth or are not telling the truth. Do you understand that?
“The Witness: Yes.
“The Court: Some of the people have testified truthfully. Some people I don’t think have testified as truthfully as others, but when I have somebody who flaunts [sic] the rule of law, do you understand what that means, flaunts [sic] the rule of law?
“The Witness: Breaks it.
“The Court: Does it with more than just breaking the law but throws it in your face, kind of thing to a police—if you walked by and threw a beer bottle at a policeman that would be more flaunting [sic] the law, than if you threw a beer bottle a mile away from the policeman. Do you understand?
“The Witness: Yes.
“The Court: I know this is abusive for you, and I know I’ve brought you in here—I didn’t bring you in here. Your mother and father brought you in here, but I still have to do my job. My job is to try and find the truth here, and I have problems believing a witness who does not believe in the rule of law because if you don’t believe in the rule of law then why should I believe your testimony? Do you understand?
“The Witness: I didn’t say I did not believe in the law.
“The Court: Well, the evidence has been thus far that you haven’t acted as if you believe in the law.
“Attorney for mother: Your Honor, just for the record, again, there is obviously no way to answer that question, and I would object to the question as being argumentative. Again, I am not trying to interfere and I’m not trying to be disrespective.
“The Court: I understand I have this problem, and I’ve never had this problem. I’ve never had this situation. I’ve been a judge for ten years. I’ve never had this situation before, and I’m asking for—you’re part of the problem, and I’m asking you to help me and figure out the answer. I wouldn’t ask it if somebody wasn’t smart enough to answer, but you appear to be a bright young woman. If you can’t answer it, just say, I can’t answer it.
*CJP Supp. 76 “The Witness: What’s your question?
“The Court: Can you help me to resolve that dilemma?
“The Witness: How could I help you? What do you want me to do? Do you want me to go with my dad because I said I wasn’t going to and I’m not going to.
“The Court: Continue—young lady that is probably a direct contempt of this Court. Do you know what the ramifications for that are?
“The Witness: No.
“The Court: We’ll be in recess. Call the public defender’s office.”
We find that the transcript itself is evidence of a lack of patience, dignity and courtesy (canon 3B(4)) and a lack of impartiality (canon 2). Judge Broadman’s questions are argumentative and objectionable on their face. He appeared to be bent on posing unanswerable questions to intimidate the 15-year-old witness. We reject any suggestion that Judge Broadman could have been reasonably surprised at the witness’s testimony. If he had not been aware of the witness’s aversion to living with her father when he altered the custody order in June, he was alerted to this by the father’s declaration in support of an order to show cause and the two days of hearing that preceded the minor’s testimony, which concerned, in large part, the daughter’s refusal to reside with her father.
Rather than allow the attorney to complete his questioning, Judge Broadman interrupted asking the girl why he should believe her testimony in light of her failure to abide by the court order that she reside with her father. Judge Broadman ignored the mother’s counsel’s objection, stated that he knew “this is abusive for you,” and when the girl finally stated that she would not live with her father, he recessed court and directed that the public defender advise her.
This questioning was inappropriate and the contemporaneous evidence strongly indicates that Judge Broadman knew that it was. Immediately after counsel objected that the questioning was “abusive to this child,” Judge Broadman asked the witness if she will “readily agree” that he is not yelling. A little later he said: “I know this is abusive for you, and I know I’ve brought you in here—I didn’t bring you in here. Your mother and father brought you in here, but I still have to do my job.” Judge Broadman then admitted that he had a problem, that he had never had this type of problem before, that the girl was part of the problem and he wanted her to help him figure out the answer. *CJP Supp. 77 When the 15-year-old then reiterated that she did not want to “go with my dad,” Judge Broadman warned her “that is probably a direct contempt of [this] Court,” directed that a public defender be appointed for the witness, and recessed court.
All the witnesses, including Judge Broadman, indicated that his questioning upset the witness. Judge Broadman testified before the special masters that initially the girl’s testimony was fine, but that later “the situation was rapidly deteriorating and I was afraid it was going to deteriorate to such an extent I was going to be stuck with an out of control teenager.” The intervening event was Judge Broadman’s interrogation. The father’s attorney testified that initially the girl “didn’t have much of a demeanor at all” and that she “seemed relatively nonemotional,” but when Judge Broadman questioned her, the girl became “more and more defiant, more and more belligerent.” The girl’s grandmother testified that the girl was very frustrated and in shock. The mother’s attorney testified that she was “terrorized and traumatized.” The public defender who was called to advise the girl testified that when she spoke to the girl she was “angry and upset at the judge,” “she was misty-eyed,” and “she was angry, she was out of control, and probably at that point in the game would not have demonstrated any respect for the court if she were to resume taking the stand.”
All the witnesses, including Judge Broadman, also indicated that when he questioned the girl he changed his demeanor. Judge Broadman testified that he is a “sloucher,” but that he “may have sat up and put my hands on my thing like this and looked past the computer to talk on to her, and the grandmother may have thought since I sat up I got in her face.” The father’s attorney testified that when the girl started to testify, Judge Broadman “sat up more straight in his chair and leaned over to ask her questions more directly.” The grandmother stated that he “would lean forward and challenge her in a cruel way.” The mother’s attorney’s paralegal testified Judge Broadman’s tone at first was a monotone, but that it subsequently got stronger and intimidating.
The father’s attorney testified that when Judge Broadman said that “this is abusive for you” he was referring to the mother’s attorney’s decision to call the girl as a witness. Such an interpretation is not supported by the record. Furthermore, the impropriety of the questioning lies in Judge Broadman’s statements and questions, not in the meaning of any particular word. An objective observer on August 28, 1996, could not have felt that the proceedings had been handled with patience, dignity and courtesy.[5]
*CJP Supp. 78 Much of the testimony before the masters concerned various interpretations as to Judge Broadman’s intent.[6] This is germane to an evaluation of the nature of the misconduct, but does not affect our conclusion that clear and convincing evidence shows that the questioning when it took place lacked patience, dignity and courtesy.[7]
Judge Broadman’s explanation of his intent and the masters’ evaluation of the witnesses’ motivations, however, do weigh in our determination that Judge Broadman’s questioning of the witness was conduct prejudicial to the administration of justice that brings the judicial office into disrepute, but not willful misconduct. Willful misconduct requires a finding of “bad faith.” The Supreme Court has defined bad faith as “(1) performing a judicial act for a corrupt purpose (which is any purpose other than the faithful discharge of judicial duties), or (2) performing a judicial act with knowledge that the act is beyond the judge’s lawful judicial power, or (3) performing a judicial act that exceeds the judge’s lawful power with a conscious disregard for the limits of the judge’s authority.” (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1092.)
Prejudicial conduct, however, is distinguishable from willful misconduct in that a judge’s acts may constitute prejudicial conduct if committed in a judicial capacity, but not committed in bad faith. (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1092.) The Supreme Court noted that prejudicial conduct can be “ ‘ “conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office.” ’ ” (Broadman v. Commission on Judicial Performance, supra, at p. 1092.)
We find that the transcript and the testimony of the witnesses clearly show that Judge Broadman’s questioning of the 15-year-old witness was unjudicial conduct in violation of canons 3B(4), 2 and 1 and that it brought the judicial *CJP Supp. 79 office into disrepute. We also find, that while Judge Broadman should have known better, he did not act in “bad faith” as that term has been defined as an element of willful misconduct. As Judge Broadman himself stated, he had “never had this situation before.” Accordingly, we find that Judge Broadman’s questioning constitutes prejudicial misconduct and not willful misconduct. The Commission’s vote on this determination was six to four.[8]
3. Count Four—Statement of Disqualification
The facts on which count four is based are not in dispute. The day after his questioning of the minor witness (see count three), Judge Broadman found the mother guilty of 13 counts of contempt of court, sentenced her to 65 days in jail and ordered her to pay substantial fines. Her attorney, with the assistance of a second counsel, filed a petition for writ of habeas corpus with the Court of Appeal. The petition raised four contentions of error, including an allegation that the contempt proceedings were permeated by judicial misconduct.
On September 13, 1996, after receiving a copy of the petition, Judge Broadman caused a minute order to be filed in that case disqualifying himself pursuant to Code of Civil Procedure section 170.6, subdivision (1). The order stated:
“Pursuant to CCP Sec. 170.6(1) this Court hereby disqualifies itself from hearing any matter which involves . . . ,”[9]
“After reading the Petition for Writ of Habeas Corpus in the above captioned matter, I have determined that I am now bias [ízc] against Mr. ... I cannot and do not trust Mr. .... He has overstepped the bounds of advocacy and has wrongly charged me with judicial misconduct and personally attacked me.”
On February 4, 1997, the Court of Appeal filed an opinion finding that the mother had been denied due process of law in that she was given insufficient notice of the purported acts of contempt she was ultimately found to have committed, and vacating the contempt order. The court did not address the other contentions of error, but it did indicate that the trial court’s fines were in excess of those provided for by statute, and questioned the court’s alleged reduction of plaintiff’s support.
*CJP Supp. 80 In March 1997, a dissolution action concerning prominent citizens of Tulare County was ready for trial. Many of the judges on the superior court had recused themselves from hearing the case. Mr._was the attorney for one of the parties.
On March 28, 1997, counsel appeared at the courthouse expecting to proceed to trial before a certain judge. The case was unexpectedly reassigned to Judge Broadman. Upon learning that Mr._was representing one of the parties, Judge Broadman took the bench and made the following statement in open court for the record:
“This case was sent down to me because there have been disqualifications by other judges. Pursuant to Rule 226, I’m directing that the clerk get a copy of the transcript of these proceedings and forward them to the presiding judge.
“I cannot be—I’m afraid I cannot be fair in this case with Mr. . . . representing the party. And I do not want to be accused of taking anyone unawares or of shirking my obligations to hear matters. Therefore, I’m stating my reasons why.
“It is my opinion that Mr. ... is unethical and dishonest. And my feelings are so strong that I’m afraid that I cannot be fair in this matter, so long as he’s representing one of the parties.
“Therefore, pursuant to the previously cited Rule of Court and section 170.3, I’m transferring this matter to the presiding judge.” The transcript shows that Judge Broadman did not inquire from counsel how they happened to be assigned to his courtroom and that he did not offer them any opportunity to comment.
These are the facts. Absent some mitigating factors, they give the appearance that the judge was not patient, dignified and courteous, as required by California Code of Judicial Ethics, canon 3B(4). It appears that when an attorney, whose presence in another case had already resulted in Judge Broadman disqualifying himself, was inadvertently or mistakenly directed to his court, Judge Broadman went beyond any explanation necessary to disqualify himself in this case and evidently could not resist the temptation to publicly label the attorney as unethical and dishonest.
The record does not contain any persuasive mitigating factors. In his testimony before the masters, Judge Broadman stated that he did not know how Mr._came to be in his courtroom, that he did not ask him to respond, and that he thought that he was “looking for a fight.” Judge Broadman did *CJP Supp. 81 not explain the basis for his opinion. He did not ask counsel how they came to be in his courtroom and there is no indication that he made any inquiry to the presiding judge. He stated that he thought that he had to have a written statement of his reasons and that it was less work to have the court reporter do it than to write it out.[10]
It has been suggested that Judge Broadman’s actions may be justified because (1) he could not rely on his initial disqualification order, (2) he was required to give reasons for his disqualification, (3) it was traditionally permissible for a judge to state his or her reasons in open court, (4) the parties were entitled to know Judge Broadman’s reasons for disqualification, and (5) the accuracy of Judge Broadman’s opinion of Mr._had not been placed in issue.
We find that none of these points justifies Judge Broadman’s unjudicial conduct. The California Code of Judicial Ethics is not limited to prescribing what a judge may legally do. It is also concerned with the manner in which a judge performs his or her duties. The conclusions that Judge Broadman could not rely on his initial disqualification order and was required to give reasons for his disqualification simply do not address the question of whether the way he chose to perform his legal duty was appropriate. Similarly, a finding that Judge Broadman chose a traditionally permissible way of proceeding does not necessarily mean that the way was judicious in this instance.
We do not suggest that a judge cannot give his or her reasons for disqualifying himself or herself from a matter, although it is not always done.[11] It is by no means clear that the parties are entitled to know a judge’s reasons, but it may be the better practice for a judge to tell them. The local Tulare County mle requiring a statement of reasons appears to be designed to give the presiding judge some assurance that a judge is not shirking his duty to hear all cases assigned to him or her unless he or she is disqualified under Code of Civil Procedure section 170.1. Judge Broadman could have easily satisfied that requirement without branding the attorney as unethical and dishonest.
*CJP Supp. 82 The suggestion that trial counsel’s failure to tender Mr._’s character somehow justifies Judge Broadman’s blanket statement raises concerns. First, Judge Broadman’s statement of reasons, although terse, is as damning as possible—an unqualified statement that the attorney is “unethical and dishonest.” This is much broader than Judge Broadman’s initial disqualification and is far more defamatory than necessary. Second, every attorney who appears in court is entitled to the conduct prescribed by California Code of Judicial Ethics canon 3B(4) regardless of the judge’s opinion of his or her character. Of course, an attorney must also treat the court with respect, but in this instance, all that Mr._did was walk into Judge Broadman’s courtroom as directed by the presiding judge or court administrator.
We conclude that Judge Broadman’s summary statement in open court that Mr._was “unethical and dishonest” was unjudicial conduct in violation of California Code of Judicial Ethics canons 3B(4) and 2. Although the actual disqualification, as well as some of the surrounding circumstances, give rise to an inference that Judge Broadman proceeded in bad faith (with the intent to punish Mr._), we conclude that the evidence of such intent is not clear and convincing. Therefore we conclude that Judge Broadman did not act in bad faith. The Commission’s vote that Judge Broadman’s actions constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute was nine to one.[12]
DISCIPLINE
The Supreme Court recently reiterated that the purpose of a Commission disciplinary proceeding is not punishment, “ ‘but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity ... of the judicial system.’ ” (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1112, quoting Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544].)
The Commission’s findings of one incident of willful misconduct and two incidents of prejudicial misconduct come on the heels of Judge Broadman’s public censure by the Supreme Court. (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th 1079.) In fairness, it is noted that the incidents here in issue occurred before the Supreme Court’s public censure. Two of the incidents, however, the “trial” in King v. Wood and more notably the characterization of Mr._as unethical and dishonest, occurred after the issuance of the Commission’s opinion recommending public censure. The Commission found the similarities between Judge Broadman’s treatment of *CJP Supp. 83 Mr. Kralowec, noted in the Supreme Court’s opinion, and Judge Broadman’s open court vilification of Mr._particularly troubling.
We determine that public admonishment is the appropriate discipline. Each of Judge Broadman’s three acts of misconduct—denying due process in a civil trial, argumentative questioning of a minor in a contempt proceeding, and labeling a lawyer as “unethical and dishonest” took place in open court. Accordingly, a public reprimand is appropriate to assure the public that such actions are not condoned. The Commission’s vote on public admonishment was six to four with two of the dissenters voting for a greater sanction (public censure or removal) and two voting for a lesser sanction.
This decision shall constitute the order of public admonishment of Judge Broadman.
Commission members Ms. Ophelia Basgal, Mr. Mike Farrell, Hon. Daniel M. Hanlon, Patrick M. Kelly, Esq., Mr. Luke Leung, and Ms. Ramona Ripston voted for the public admonishment. Commission members Robert C. Bonner, Esq., and Donald E. Vinson, Ph.D., voted against a public admonishment, favoring a greater sanction. Commission members Hon. Lois Haight and Ms. Harriet Salarno voted against a public admonishment, favoring a lesser sanction. There was one vacant position on the Commission.

 The Commission normally consists of 11 members. There is one vacancy.

 The special masters found that there was not clear and convincing evidence to support the allegations that Judge Broadman interfered with the parties’ right to have the trial reported or recorded or the parties’ right to appeal his decision. The Commission, having reviewed the record, concurs in the special masters’ determination and dismisses these charges.

 Counsel for Judge Broadman suggested that Judge Broadman, in essence, granted the equivalent of a judgment on the pleadings or nonsuit. The Commission agrees with the special masters response to this argument. They wrote: “Simply put, this is not what Broadman did. The testimony of Johnson, King, and the declaration of Wood, coupled with the written judgment Broadman signed, clearly and convincingly establish that Broadman did not grant a judgment on the pleadings or nonsuit. Such a suggestion has no evidentiary support; it merely places Broadman in the untenable position of granting such a dispositive motion on his own initiative without affording plaintiff notice of what he was doing and an opportunity to be heard.”

 One Commission member would have voted for a lesser level of misconduct.

 The Advisory Committee Commentary to canon 2 notes that: “The test for the appearance of impropriety is whether a person aware of the facts might reasonably entertain a doubt that the judge would be able to act with integrity, impartiality and competence.” (Italics omitted.)

 At the hearing before the Commission, Judge Broadman’s counsel suggested that he had been trying to impress upon Gretchen the need to tell the truth. The record, however, shows that Gretchen’s problem was not a tendency to mislead the court, but that she was too open about her refusal to live with her father.

 The only arguably objective evidence that the questioning was not improper was the testimony of the two attorneys, who were called to represent the children after Judge Broadman had recessed the hearing, that they had read the transcript and did not think the questioning unusual. Neither of these attorneys witnessed the questioning. One attorney indicated that her evaluation was based on watching judges take over the questioning of minors in juvenile matters and that this was the first time she had seen it in connection with contempt proceedings in a divorce case. The second attorney testified that his evaluation was based on a reading of the transcript and his “knowledge of having appeared in front of Judge Broadman on many occasions.” He further testified that when judges asked questions of his minor clients, he usually objects and that one should be gentle and kind when questioning a young witness.

 The four in the minority would have dismissed the count.

 The attorney’s name has been deleted throughout this decision and order.

 Although Judge Broadman testified before the special masters that his action was not in retaliation for Mr. _taking a writ, the appearance of retaliation remains. Despite Judge Broadman’s initial statement to the masters that he did not know what attorney took the writ, he subsequently admitted that he entered the initial disqualification after reading the writ and offered no explanation for the disqualification other than Mr._,’s actions in the Smith case.

 Code of Civil Procedure sections 170.1 and 170.3 did not require that Judge Broadman state his reasons for disqualifying himself. Former section 170, which required such a statement, was repealed in 1984. Section 170.3, subdivision (a) only requires that a judge who determines himself or herself to be disqualified notify the presiding judge of the court of his or her recusal.

 One Commission member would have dismissed the count.